THE DRISCOLL FIRM, P.C.
JOHN J. DRISCOLL (MO54729)
The Driscoll Firm, P.C.
211 N. Broadway, Ste. 4050
St. Louis, Missouri 63102
314-932-3232 phone
314-932-3233 facsimile
John@thedriscollfirm.com

and

DOWD & DOWD, P.C.
DOUGLAS P. DOWD (MO29240)
ALEX R. LUMAGHI (MO56569)
211 North Broadway, Suite 4050
St. Louis, Missouri 63102
314-621-2500 phone
314-621-2503 facsimile
doug@dowdlaw.net
alex@dowdlaw.net

FILED
2012 JUL 12  PM 12: 47

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EDITH SALKELD, | Case No.  **12CV 1728 JAH WMc** |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | Complaint for violations of N.M. Stat. § 57-12-1 *et seq.*; RICO, 18 U.S.C. § 1962 et seq. and Unjust Enrichment |
| THE SCOTTS MIRACLE-GRO COMPANY, | |
| Defendant. | |

**CLASS ACTION COMPLAINT**

COMES NOW Edith Salkeld, individually and on behalf of all similarly situated persons, and for her Class Action Complaint, states as follows:

1

1.      This is a Class Action brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and under the state consumer fraud statute and/or unfair trade practice act of New Mexico, seeking money damages arising from the purchase price paid by Plaintiff and the Class for certain wild bird feed and animal feed products manufactured, marketed and sold by Defendant Scotts Miracle-Gro Company under various trade names.

2.      Unbeknownst to Plaintiff and the Class, these products, while intended and marketed for use as feed for birds and other animals, in fact contained pesticides that are toxic, harmful and potentially fatal to birds, fish and other wildlife. Scotts failed to disclose that its bird seed contained pesticides that were known to be highly toxic to birds. Instead, Defendant knowingly sold millions of units of its defective and toxic bird feed products, knowing the products would be widely used to feed birds at purchasers' homes, in back yards and in wild and natural environments across the United States. Due to Defendant's concealment of material information regarding its use of toxic chemicals in its products, Defendant's products were not appropriate for their intended and marketed use as bird feed, and were not worth the purchase price paid by Plaintiff and the Class. As a result of Defendant's criminal enterprise, thousands of American consumers and other purchasers across the country did not receive the benefit of their bargain and were damaged.

## I.     PARTIES.

3.      Defendant The Scotts Miracle-Gro Company ("Scotts") is the world's largest marketer of branded consumer lawn and garden products. It is located at 14111 Scottslawn Road in Marysville, Ohio 43041, and is a corporation registered to do business in the State of Ohio.

Scotts manufactures and sells products including pesticides, herbicides, fertilizers, and bird and animal foods under numerous brand names.

4.     Plaintiff Edith Salkeld is a domiciliary and citizen of the State of New Mexico. Plaintiff Salkeld purchased Defendant's wild bird seed products in the State of New Mexico.

## II.     VENUE AND JURISDICTION.

5.     This Court has subject matter jurisdiction over this action and all claims asserted against Defendant pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. Section § 1332(d). The putative class contains at least 100 members, the members of the putative class are citizens of a state different from that of any Defendant, and the amount in controversy exceeds $5 million in the aggregate for the entire class, exclusive of interest and costs. See 28 U.S.C. §§ 1332(d)(2), (d)(5)(b) and (d)(6).

6.     Venue is proper in the United States District Court for the Southern District of California in that a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of California.

## III.     FACTS COMMON TO ALL COUNTS.

7.     Beginning in approximately November of 2005, the Scotts Miracle-Gro Company manufactured and distributed several widely-used brands of food for wild birds, marketed under various names, including "Country Pride", "Morning Song", "Scott's Songbird Selections" and "Scott's Wild Bird Food." These brand lines included bags of seed and seed mixes, suet blocks and other foods intended for wild birds, and are referred to collectively herein as "Morning Song." These "Morning Song" products include but are not limited to the following products manufactured, marketed and sold by Defendant:

3

1)   Deer Corn (Straight Seed) packed in 25, 40 and 50 LB polywoven bags identified with the following brand names: Academy; Morning Song; Moultrie; Remington/ Wild Game Innovations; Shelled Corn (No brand name listed) and Southern Grain, Recall # V-114-2008;

2)   ACO brand Promo Wild Bird Blend packed in 20 LB polywoven bags, Recall # V-115-2008;

3)   Andersons Bird Mix packed in 20 LB and 50 LB polywoven bags, Recall # V-116-2008;

4)   Sunflower Chips, medium/fine identified as follows: Blended Chips (No brand name Listed) 50 LB polywoven bags; Fine Chips (no brand name listed) packed in 50 LB polywoven bags; and Morning Song Hearts & Chips 5.5 LB/9 size packed in plastic bags, Recall # V-117-2008;

5)   Century Resources Wild Bird Food Bell 16 oz/32 oz. packed in plastic shrink wrap, Recall # V-118-2008;

6)   Morning Song Deer and Turkey Mini Block packed in plastic bags, Recall # V-119-2008;

7)   Black Oil Sunflower distributed under the following brand names and package sizes: Harris Teeter Black (Sunflower) Oil packed in 10 LB/5 and 5 LB/6 plastic bags; Meijer Black Oil Sunflower Seed packed in 10 LB/5 and 20 LB plastic and/or polywoven bags; Morning Song Black (sunflower) Oil, straight seed, packaged 2 LB/20; 5 LB/6; 5 LB/6 ACO; 10 LB/5 ACO; 20 LB; 20 LB/42; 25 LB; 25 LB TRL; 50 LB; and 50 LB/28, in plastic or polywoven bags; Nutriplan Black (sunflower) Oil  (Straight Seed) 10 LB/5 packed in plastic bags; and Publix Black Oil 2 LB/20 packed in plastic bags, Recall # V-120-2008;

8)   Harris Teeter Red Bird Feed packed in 7 LB/5 plastic bags, Recall # V-121-2008;

9)   Harris Teeter Wild Bird Food 5 LB/5, 10 LB/5, and 20 LB plastic bags and/or polywoven bags, Recall # V-122-2008;

10)  Country Pride Suet identified as: Meijer Natural Suet 11 oz/12 ; Morning Song High Energy Suet, sizes: 24 CT; 11 oz/12: 11 oz/24; and 22 oz/12, packed in plastic trays with labels; Morning Song Year-Round Sue, sizes: 10 PK Mini Palle; 10 PK/4; 11.75 oz/12; 11.75 oz/24 packed in cardboard boxes and/or in plastic

4

trays with label; Royal Wing All Season Suet 12 CT packed in plastic trays with labels; Royal Wing High Energy Suet, 12 CT packed in plastic trays with labels; andSquirrel-Free Suet 11.75 oz/12 packed in plastic trays with labels, Recall # V-123-2008;

11)    Meijer Natural Wild Bird Food packed 10 LB/5; 20 LB; and 40 LB in plastic and polywoven bags, Recall # V-124-2008;

12)    Striped Sunflower products as follows: Morning Song Striped Sunflower food (Straight Seed), sizes: 5 LB/5; 10 LB/4 ACO: 10 LB/4; 20 LB; 40 LB; and 40 LB ACO, packed in plastic or polywoven bags; and Meijer Striped Sunflower Seed packed in 10 LB/4 plastic bags, Recall # V-125-2008;

13)    Morning Song Apple Crisp (Suet) Dough, 12CT packed in plastic trays w/labels, Recall # V-126-2008;

14)    Morning Song Backyard Songbird packed in 40 LB boxes packed in boxes with individual plastic bags, Recall # V-127-2008;

15)    Morning Song Black (Sunflower) Oil Bell packed 10 oz/12 (Pressed Seed) packed in plastic shrink wrap, Recall # V-128-2008;

16)    Morning Song Birdwatchers' Blend packed 4.5 LB/4; 7 LB/6; 8 LB/5; 9 LB/5; 12 LB/4; and18 LB/3 in plastic bags, Recall # V-129-2008;

17)    Birdwatchers Pressed Seed - products as follows: Morning Song Birdwatchers' Bar packed 13 oz/6; in plastic bags; Morning Song Birdwatchers' Bell packed 10 oz/12 in plastic shrink wrap; Morning Song Birdwatcher Mini-Snack (Pressed Seed) 8 oz/12 packed in plastic bags; and Morning Song Birdwatchers' Snack, 2 LB/4 packed in plastic bags, Recall # V-130-2008;

18)    Morning Song Birdwatchers' Ready Feeder (Blend) packed in plastic tubes, Recall # V-131-2008;

19)    Morning Song Birdwatchers' Suet (Suet/Dough) packed 10.75 oz/12; and 10.75 oz/24 in plastic trays with labels; and Scotts Multi-Bird Suet 10.75 oz/12 packed in plastic trays with labels, Recall # V-132-2008;

20)    Morning Song Berry Punch Suet (Suet/Dough) 11.7 5 oz/12; and 11.75 oz/24 packed in plastic trays with labels, Recall # V-133-2008;

21) Morning Song Bug Fest (Blend) 5 LB/4 CDN; 5 LB/4 SPAN; 9 LB/5; and 9 LB/6 sizes packed in plastic bags, Recall # V-134-2008;

22) Morning Song Chickadee & Nuthatcher (Blended) food in 3 LB/12 size plastic bags, Recall # V-135-2008;

23) Morning Song Cherry Delight (Blend) in 3.5 LB/4 and 8.5 LB plastic bags, Recall # V-136-2008;

24) Morning Song Cherry Pie Dough, 12 CT (Suet/Dough) packed in plastic trays with labels, Recall # V-137-2008;

25) Morning Song Clean & Free (Blend) 5 LB/10: 10 LB/5; and 18 LB packed in plastic bags, Recall # V-138-2008;

26) Morning Song Country Pride-ACO (Blend) in sizes: 4 LB/14; 4 LB/440; 5 LB/10; 10 LB/5; 10 LB/144; 20 LB; 20 LB VAR; 23 LB; and 50 LB packed in plastic and/or polywoven bags, Recall # V-139-2008;

27) Morning Song Cracked Corn (Straight Seed) in 4 LB/12; 5 LB/8; 5 LB8 ACO; 25 LB; and 50 LB sizes packed in plastic and/or polywoven bags, Recall # V-140-2008;

28) Morning Song Cardinal Food (Blend) in 3.5 LB/10; 5 LB/8; 7 LB/5; 20 LB; and 40 LB sizes and packed in plastic or polywoven bags, Recall # V-141-2008;

29) Morning Song Cardinal Snack (Pressed Seed) 1.75 LB/4 packed in plastic bags, Recall # V-142-2008;

30) Morning Song Deluxe Wild Bird Food (Blend) 10 LB/5; 20 LB; and 40 LB sizes packed in plastic or polywoven bags, Recall # V-143-2008;

31) Morning Song Dough-Nut (Suet/Dough) 12 CT packed in plastic trays with labels, Recall # V-144-2008;

32) Morning Song Dove food (Blend) 7 LB/6 packed in plastic bags, Recall # V-145-2008;

33)  Morning Song Dove Block (Pressed Seed) 4.5 LB/2 packed in plastic bags, Recall # V-146-2008;

34)  Morning Song Ear Corn (Straight Seed) 6.5 LB/156 packed in plastic bags, Recall #V-147-2008;

35)  Morning Song Fall & Winter Blend in 18 LB; and 18 LB/3 sizes packed in plastic bags, Recall # V-148-2008;

36)  Morning Song Finch Sock (Sock) Shipper packed in plastic bags; and Scotts Finch & Small Songbird Sock Feeder 13 oz/10, packed in plastic tubes, Recall # V-149-2008;

37)  Morning Song Finch W/Canola Seed (Blend) 5 LB/8 size packed in plastic bags, Recall # V-150-2008;

38)  Morning Song Finch & Chips (Blend), sizes: 5 LB/4 CDN; 5 LB/4 SPAN; 9 LB/6; and 9 LB/5 packed in plastic bags, Recall # V-151-2008;

39)  Morning Song Fruit, Berry & Nut (Blend) sizes: 7 LB/5; 7 LB/36; 7 LB/6; and 15 LB/3, packed in plastic bags, Recall # V-152-2008;

40)  Morning Song Gourmet Wild Bird Food, 10 LB/5; and 20 LB/3 packed in plastic and/or polywoven bags, Recall # V-153-2008;

41)  Morning Song Jazz Berry, sizes: 4.5 LB/4 CDN; 4.5 LB/4 SPAN, 9 and Smith & Hawken Jazz Berry Jug, Recall # V-154-2008;

42)  Morning Song Nutty Safari (Blend) sizes: 4.25 LB/4 CDN; 4.25 LB/4 SPAN; 9 LB/4; and Smith & Hawken Nutty Safari Jug (Blend) 6 LB/6, packed in plastic jugs, Recall # V-155-2008;

43)  Morning Song Nutty Safari Suet (Suet/Dough), sizes: 11 oz/12; 11 oz/24; and Morning Song Nutty Safari Jumbo Suet, size: 24 oz/5. These products are packed in plastic trays with labels, Recall # V-156-2008;

44)  Morning Song Orange Slice Dough 12 CT (Suet/Dough) packed in plastic trays with labels, Recall # V-157-2008;

45)    Morning Song Peanuts (Straight Seed) 3 LB/6 packed in plastic bags, Recall # V-158-2008;

46)    Morning Song Pumpkin Delight10 LB/5 (Blend) and 4 LB/8 sizes, packed in plastic bags, Recall # V-159-2008;

47)    Morning Song Pumpkin Party, sizes: 4.5 LB/8 and 4.5 LB/4 (Blend) packed in plastic bags, Recall # V-160-2008;

48)    Morning Song Premium Wild Bird Food (Blend) sizes: 5 LB/10; 10 LB/5; 10 LB/144; 20 LB; 20 LB/1TRL; 20 LB/48; 40 LB. These items are packed in plastic and/or polywoven bags, Recall # V-161-2008

49)    Morning Song Raisin Crunch Suet (Suet/Dough), 11.75 oz/12 and 11.75 oz/24 sizes packed in plastic trays with labels; and Scotts Multi-Bird Suet with Fruit and Nuts (Suet/Dough) 11.75 oz/12 packed in plastic trays with labels, Recall # V-162-2008;

50)    Morning Song Safflower (Straight Seed), sizes: 7 LB/33 and 7 LB/6 packed in plastic bags and Safflower (Straight Seed) sizes: 20 LB and 50 LB packed in polywoven bags, Recall # V-163-2008;

51)    Morning Song Safflower Snack, (Pressed Seed) sizes: 1.7 LB, Recall # V-164-2008;

52)    Morning Song Sunflower Suet (Suet/Dough) 9 oz/12 packed in plastic trays with labels, Recall # V-165-2008;

53)    Morning Song Songbird food (Blend), sizes: 7 LB/5 CDN; 7 LB/5; 14 LB/3 CDN; and 14LB/3, packed in plastic bags, Recall # V-166-2008;

54)    Morning Song Songbird Garden Box, 35 LB box packed in a box with individual plastic bags, Recall # V-167-2008;

55)    Morning Song Songbird Sock 8 oz/10, packed in plastic tubes, Recall # V-168-2008;

56)    Woodpecker Pressed Seed - Products are as follows: Morning Song Snack and Basket Combo/2 (Pressed Seed) packed in plastic shrink wrap; Morning Song Snack-MMM's in 13 0z/4 size packed in plastic bags; Morning Song Woodpecker

8

Bar & Basket/6 and Woodpecker Bar/6 Morning Song Woodpecker Snack 2 LB/4; and Woodpecker Mini Snack 7.5 oz/12 packed in plastic bags; and Scotts Woodpecker Snack (Pressed Seed) size 2 LB/4, placed in plastic bags, Recall # V-169-2008;

57) Morning Song Squirrel & Critter food (Blend), sizes: 5 LB/10; 10 LB/5; and 20 LB/3. These products were packed in plastic or polywoven bags, Recall # V-170-2008;

58) Morning Song Squirrel & Critter Snack (Pressed Seed) 2.2 LB/4 size packed in plastic bags, Recall # V-171-2008;

59) Morning Song Super Finch Bar (Pressed Seed) 14 oz/6 size packed in plastic bags, Recall # V-172-2008;

60) Morning Song Super Finch Food (Blend), sizes: 5 LB/8; and 10 LB/4 packed in plastic bags and Smith & Hawken Super Finch Jug, Recall # V-173-2008;

61) Morning Song Super Finch Snack, 4 LB/2 (Pressed Seed) packed in plastic bags, Recall # V-174-2008;

62) Morning Song Supreme Basket (Blend) 20 LB, packed in plastic buckets, Recall # V-175-2008;

63) Morning Song Trail Mix (Blend), sizes: 5 LB/8; 5 LB/50; 9 LB/4, packed in plastic bags, Recall # V-176-2008;

64) Morning Song Variety Suet (Suet/Dough) 3 PK/4 CDN; and Variety Suet W/Basket, 15 pack. These items are distributed in cardboard boxes and/or plastic trays with labels, Recall # V-177-2008;

65) Morning Song Woodpecker food (Blend) 4 LB/10 packed in plastic bags, Recall # V-178-2008;

66) Morning Song Woodpecker Suet (Suet/Dough) sizes: 24 Ct; 3 PK/4; 9.5 oz/12; 9.5 oz/24 packed in plastic trays with labels; and Scotts Woodpecker Suet (Suet/Dough) 9.5 oz/12 size packed in plastic trays with labels, Recall # V-179-2008;

67)   Morning Song White Millet (Straight Seed) 10 LB/5 packed in plastic bags, Recall # V-180-2008;

68)   Morning Song Wild Bird Bell, sizes: 16 oz/12 and 6 PK/4 (Pressed Seed) packed in plastic shrink wrap; Morning Song Wild Bird Snack 2 LB/4: and Morning Song Wild Bird Mini-Snack 9 oz/12 packed in plastic bags or plastic shrink wrap, Recall # V-181-2008;

69)   Morning Song Wild Finch Food (Blend) sizes: 3 LB/14; 8 LB/6; and 10 LB/5, packed in plastic bags, Recall # V-182-2008;

70)   Morning Song Year-Round Wild Bird Food (Blend), sizes: 10 LB/5; 25 LB; 30 LB; 50 LB; and 55 LB, Recall # V-183-2008;

71)   Nutriplan Wild Bird Food (Blend) sizes: 5 LB/10; 10 LB/5; and 20 LB packed in plastic or polywoven bags, Recall # V-184-2008;

72)   Peanut Pickouts (Straight Seed) 50 LB packed in polywoven bags, Recall # V-185-2008;

73)   Publix Red Bird food (Blend) 7 LB/5 packed in plastic bags, Recall # V-186-2008;

74)   Publix Wild Bird Food (Blend) sizes: 5 LB/10; 10 LB/5 and 20 LB/3, packed in plastic or polywoven bags, Recall # V-187-2008;

75)   Purina Birdlovers' Blend sizes: 25 LB and 50 LB polywoven bags, Recall # V-188-2008;

76)   Purina Regional Recipe (Blend) 25 LB and 50 LB sizes packed in polywoven bags, Recall # V-189-2008;

77)   Royal Wing Birdlovers Suet 12 CT (Suet/Dough) packed in plastic trays with labels,   Recall # V-190-2008;

78)   Royal Wing Berry Suet (Suet/Dough) 12 CT, packed in plastic trays with labels, Recall # V-191-2008;

79)   Royal Wing Peanut Suet (Suet/Dough) 12 CT packed in plastic trays with labels, Recall # V-192-2008;

80)   Royal Wing Raisin Suet (Suet/Dough) packed in plastic trays with labels, Recall # V-193-2008;

81)   Royal Wing Sunflower Suet (Suet/Dough) packed in plastic trays with labels, Recall # V-194-2008;

82)   Royal Wing Woodpecker Suet (Suet/Dough) 12 CT packed in plastic trays with labels, Recall # V-195-2008;

83)   Scotts Gourmet Finch Blend (Blend) 5 LB/6 packed in plastic bags, Recall # V-196-2008;

84)   Scotts Seed Fruit & Berry (Blend) 5 LB/6 packed in plastic bags, Recall # V-197-2008;

85)   Scotts No-Mess Patio Blend 5.5 LB/6 and No-Mess Patio Blend WBF 24 LB/1, (Blend) packed in plastic bags and 11 LB/4, Recall # V-198-2008;

86)   Scotts Songbird Selection No-Mess Patio food (Blend) 11 LB/4, packed in plastic bags, Recall # V-199-2008;

87)   Scotts Songbird Selection Finch & Small Songbirds (Blend) sizes: 5 LB/6; 6 LB/5; 10 LB/4; 12 LB/4, packed in plastic bags, Recall # V-200-2008;

88)   Scotts Songbird Selections Multi-Bird (Blend) sizes: 5 LB/44; 5 LB/6; 6 LB/6; 10 LB/4; 12 LB/4; and 18 LB/3, packed in plastic bags, Recall # V-201-2008;

89)   Scotts Songbird Selections Multi-Bird Fruit & Nut (Blend) sizes: 5 LB/6; 6 LB/6; 10 LB/4; 12 LB/4, packed in plastic bags, Recall # V-202-2008;

90)   Scotts Songbird Selections No-Mess Patio (Blend) sizes: 5.5 LB/6; 6.5 LB/6; and 13 LB/4, packed in plastic bags (*distribution amount includes 07 and 08 product formulations which vary slightly in some non-key ingredients), Recall # V-203-2008;

91)   Scotts Ultimate Songbird (Blend) sizes: 5 LB/6 and 10 LB/4, packed in plastic bags, Recall # V-204-2008;

11

92)     Shoppers Value Wild Bird Food, 20 LB (Blend) packed in polywoven bags, Recall # V-205-2008; and

93)     Squirrel-Free Wild Bird Food (Blend) 8LB/4, packed in plastic bags, Recall # V-206-2008.

18.     Beginning in approximately November, 2005, Scotts produced its Morning Song products by adding the insecticides Storcide II and Actellic 5E in order to prevent insect infestation of the feed grains during storage. Storcide II and Actellic 5E are pesticides registered by the EPA. The application of Storcide II and Actellic 5E to bird food is not a use authorized by the EPA for either of these pesticides. The EPA-approved Storcide II label specifically warns that "**Storcide II is extremely toxic to fish and toxic to birds and other wildlife.**" It also explicitly warns that "**Exposed treated seeds are hazardous to birds and other wildlife.**"

19.     On information and belief, during the summer and fall of 2007, a pesticide chemist and an ornithologist working for Scotts warned Scotts about the application of the pesticides Storcide II and Actellic 5E to Scotts' Morning Song Products.  These employees warned Scotts about the potential threat to birds from using Storcide II in the bird food Scotts was selling nationwide. Notwithstanding these warnings from its own employees, Scotts, for over two years after it acquired the Morning Song bird food line and for six months after the specific warnings raised by its employees, continued to use the toxic Storcide II on its Morning Song products, an application not authorized by the EPA, as well as another pesticide, Actellic 5E, which was also not authorized for use on bird food. Scotts continued to sell its Storcide II and Actellic 5E treated bird food until March 2008, at which time Scotts recalled its remaining Morning Song products from the market.

20.     On information and belief, Scotts did not decide to recall its products because its products contained toxic chemicals and were being sold in violation of federal law, as Scotts had decided not to recall these products even when two employees specifically raised issues regarding the pesticides. Rather, Scotts became aware that the EPA was investigating it regarding the illegal use of pesticides in two other of Scotts' products, "Scotts Garden Weed Preventer & Plant Food" and "Scotts Lawn Service Fertilizer with Halts Crabgrass Preventer." Neither of these products were registered with the EPA and were also being illegally sold to the public. When the EPA contacted Scotts asking for the required documents and certificates regarding these products, a Scotts federal registrations manager fabricated correspondence and agency documents in an effort to deceive the EPA into believing it had registered the products but lost its files. The EPA then launched an investigation. On information and belief, Defendant only decided to carry out a recall of its Morning Song products in 2008 because Defendant knew that the ongoing EPA investigation would inevitably uncover evidence of Defendant's illegal and wrongful use of pesticides in its Morning Song products as well.

21.     Between its acquisition of Morning Song bird food products in November of 2005, and their recall at the end of March of 2008, Scotts distributed approximately 73,000,000 units of bird food treated with the pesticides Storcide II and Actellic 5E, applications not authorized by the EPA. Scotts' recall in 2008 only recovered and prevented from use about 2,000,000 units.   In sum, huge quantities of Defendant's pesticide-laden bird seed were distributed across the United States and fed to birds and other animals because of Defendant's wrongful and illegal conduct.

22.     On January 25, 2012, an Information was filed by the United States Attorney in the United States District Court for the Southern District of Ohio charging Scotts with a series of

federal crimes, including the Defendant's illegal use of the pesticides Storcide II and Actellic 5E in its Morning Song products. Among other things, the criminal Information charged that "Between November 2005 and 2008, SCOTTS ... improperly used the EPA-registered pesticides Storcide II and Actellic 5E to treat grains and marketed those grains as bird food. SCOTTS thereby knowingly used the registered pesticides Storcide II and Actellic 5E in a manner contrary to their labels." On March 12, 2012, Defendant entered its guilty plea to these charges.

23.     Defendant's public statements during the recall of the Morning Song products in 2008 were highly deceptive and intended to mislead purchasers of Morning Song products, including Plaintiff and the Class. Scotts, a publically traded company with billions of dollars in annual sales and millions of dollars in annual expenditures on television and other advertising, did nothing to notify and alert the public, consumers and purchasers that the recalled bird seed in fact contained a chemical specifically known to be toxic to birds.

24.     Rather than publically identify the specific toxic pesticides used by Defendant or provide the necessary warnings regarding toxicity, Defendant referred to these chemicals generically as "insect controls." Most importantly, Defendant intentionally and materially omitted the material fact that the pesticides used on the Morning Song seed were known to be toxic to birds and other wildlife, including when used as treatment for grain or seeds as in the Morning Song products.

25.     Instead, Defendant sought to create the impression that the recall was solely a "regulatory matter" because the "insect controls" were not approved for use on animal seed, suggesting that the recall had little to do with the safety or appropriateness of Morning Song products as feed for wild birds and wild animals.

14

26.    In fact, Defendant continued to deceptively suggest that the Morning Song products were safe and appropriate for such use, stating to the public that: **"We believe that the wild bird food and wild animal food did not constitute a significant health risk to wild birds, small animals or humans who handle the food."** Through these and similar statements, Defendant sought to minimize or evade liability for Defendant's wrongdoing, prevent negative media attention and publicity regarding Scotts wrongful use of toxic pesticides in its Morning Song products, and preserve Defendant's market share and ability to sell these types of products in the future.

27.    As a result of Defendant's efforts to conceal the nature and extent of its criminal and wrongful activity, Plaintiff, the Class and the public at large could not have known of Defendant's conduct until the federal government instigated its criminal prosecution of Defendant in January of 2012. The foregoing allegations, those that follow, and those facts to be proven at trial, establish and will establish that the Defendant acted affirmatively, through active and intentional fraudulent omission, concealment, and suppression of material information to conceal Defendant's fraud from Plaintiff and the Class. Defendant's wrongful conduct and fraudulent concealment tolls the running of any statute of limitations until, at the earliest, the federal prosecution was initiated on or about January 25, 2012. Furthermore, Defendant is estopped from asserting any statute of limitations defense in this matter because of its conduct in concealing the fraud claims of Plaintiffs and the Class and concealing the damages incurred by Plaintiff and the Class.

28.    Defendant's fraudulent, criminal and wrongful behavior occurred nationwide, and did not stop at the borders of any individual states. The filing of this class-action complaint

15

serves to toll and preserve the claims of the Class members and other purchasers who were defrauded by Defendant's wrongful and unlawful acts.

## IV.    CLASS ACTION ALLEGATIONS.

29.    Count I of this Class Action suit, alleging violations of state consumer fraud statutes, is brought on behalf of purchasers who are domiciliary citizens of the state of New Mexico and who purchased Defendant's Morning Song products, as identified in paragraph 17, supra, and which were manufactured between and including November of 2005 and March of 2008. Plaintiff seeks class certification of state-wide fraud sub-class under the consumer fraud statute of New Mexico, for the following described class:

> All domiciliary citizens of the state of New Mexico who purchased Defendant's "Morning Song" wild bird seed products manufactured between November of 2005 and March of 2008, not for resale.

30.    Counts VII and VIII of this Class Action Complaint are brought on behalf of a nationwide class of purchasers, for the following described class:

> All domiciliary citizens of the United States who purchased Defendant's "Morning Song" wild bird seed products manufactured between November of 2005 and March of 2008, not for resale.

31.    Excluded from the Class are the Defendant, any parent, subsidiary, affiliate, or controlled person of Defendant, as well as the officers, directors, agents, servants, or employees of Defendant, and the immediate family member of any such person. Also excluded is any trial judge who may preside over this cause. Damages sought to be recovered by any judgment pursuant to this class action do not include damages for personal injury.

32.    Plaintiff is a member of the Class and they will fairly and adequately assert and protect the interests of the Class. The interests of the Plaintiff are coincident with, and not

antagonistic to, those of other members of the Class. Plaintiff has retained attorneys who are experienced in class action litigation.

33.     Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are thousands of members of the Class in the State of New Mexico.

34.     Common questions of law or fact predominate over any questions affecting only individual members of the Class. Common questions include, but are not limited to, the following:

a.     Whether the Defendant engaged in marketing and promotional activities which were likely to deceive purchasers, by omitting, suppressing, and/or concealing the fact that Defendant's Morning Song products contained pesticides which were toxic to birds, fish and other wild animals;

b.     Whether the Defendant omitted, suppressed, and/or concealed material facts concerning its Morning Song products from Plaintiffs and the Class;

c.     What the fair market value of Defendant's Morning Song products would have been throughout the class period but for the Defendant's and its employees and agents' omissions, suppressions, and/or concealments concerning the use and properties of the pesticides included in its Morning Song products;

d.     Whether the prices which the Defendant charged for its poisoned bird seed throughout the class period exceeded the fair market value the products would have had for use as wild bird seed but for the Defendant's omissions, suppressions, and/or concealments;

e.     Whether Plaintiff and the Class were deprived of the benefit of the bargain in purchasing Defendant's Morning Song products;

f.     Whether the excessive prices that the Defendant charged were in violation of state consumer fraud statutes and/or unfair trade practices acts;

g.     Whether the Defendant's unconscionable actions occurred in connection with the Defendant's conduct of trade and commerce;

17

h.    Whether the Defendant's omissions, suppressions, and/or concealments of the hazards of Defendant's "Morning Song" products allowed Defendant to charge unfair or unconscionable prices for its wild bird seed products;

i.    Whether the Defendant was unjustly enriched at the expense of the Class members;

j.    Whether the Defendant's conduct was intentional, in bad faith, willful and wanton, or in reckless and conscious disregard of the rights of Plaintiffs and the Class;

k.    Whether Defendant's use of the mails, wire, radio and television to make fraudulent statements in furtherance of its criminal scheme constituted mail fraud under 18 U.S.C. § 1341 or wire fraud under 18 U.S.C. § 1343.

b.    Whether Defendant's agreement and activities in furtherance of its agreement with members of the criminal enterprise and in furtherance of the scheme to promote its Morning Song products constitute an "enterprise" as defined in 18 U.S.C. § 1961(4) that is engaged in, or the activities of which affect, interstate or foreign commerce;

c.    Whether the policies and practices described herein constitute Defendants' conduct or participation, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity;

d.    Whether Defendants have violated 18 U.S.C. §1962(c);

k.    Whether the Class has been damaged and, if so, the extent of such damages.

35.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class; and adjudication with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members that are not parties to the adjudication or substantially impair or impede their ability to protect their interests.

36.    The class action method is appropriate for the fair and efficient prosecution of this action. Individual litigation of all claims which might be assessed by all Class Members would

produce such a multiplicity of cases that the judicial system having jurisdiction over the claims would remain highly congested. Class treatment, by contrast, provides manageable judicial treatment calculated to bring a rapid conclusion to all litigation of all claims arising as a result of the aforementioned wrongful and illegal conduct of the Defendant.

37.     Furthermore, on information and belief, the individual units of Defendant's Morning Song products sold for approximately $10 to $40 per unit, and many class members are likely to have purchased only a small number of units. Therefore, certification of a Class would allow litigation of claims that, in view of the expense of the litigation, may be insufficient in amount to support separate actions.

## COUNT I

### VIOLATION OF NEW MEXICO UNFAIR PRACTICES ACT

COMES NOW Plaintiff, individually and on behalf of all others similarly situated, and for Count I of her Complaint against Defendant alleges as follows:

38.     Plaintiff re-alleges the allegations contained in the foregoing paragraphs 1 through 83 as if fully set out herein.

39.     This count is brought pursuant to the New Mexico Unfair Practices Act, codified at N.M. Stat. § 57-12-1 *et seq.* ("NMUPA").

40.     Plaintiff and the Class are persons within the meaning of the New Mexico Unfair Practices Act, and have suffered a loss of money or property, real or personal, as a result of the employment by Defendant of methods, acts, or practices declared unlawful by the Unfair Practices Act. N.M. Stat. § 57-12-10(B).

41.     The New Mexico Unfair Practices Act, N.M. Stat. Section 57-12-2(D) defines an "unfair or deceptive trade practice" as "an act specifically declared unlawful pursuant to the

19

Unfair Practices Act, a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person[.]" Among other things, the NMUPA also prohibits "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have." N.M. Stat. § 57-12-2(D)(5).

42.     Among other things, New Mexico Unfair Practices Act imposed a duty on Defendant to disclose material facts regarding its products, including any material facts reasonably necessary to prevent Defendant's representations that its Morning Song products were safe and appropriate for use as wild bird and animal feed from being misleading.

43.     Defendant's commission of unlawful acts in violation of the New Mexico Unfair Practices Act includes one or more of the following:

a.     Omitting, suppressing, and/or concealing the material fact that the Defendant's Morning Song products contained the pesticides Storcide II and Actellic 5E;

b.     Omitting, suppressing, and/or concealing the material fact that the pesticides used in Defendant's Morning Song products were known to be toxic to birds, fish and other wildlife, including when used as treatment on seed;

c.     Affirmatively misrepresenting to purchasers, including through package labeling, advertising, and other means, that the Morning Song products were appropriate and proper for use as bird seed, despite the fact that the products contained toxic pesticides;

d.     Failing to alert the public and purchasers at any time, including during the recall of its products, regarding the dangers arising from Defendant's use of pesticides which were known to be toxic to birds, fish and other wildlife, including when used as treatment on seed; and

e.    Unlawfully promoting and marketing Defendant's Morning Song products which contained registered pesticides, without the required warnings, and without disclosing these material facts to purchasers.

44.    Defendant's misrepresentations and material omissions regarding the toxic chemicals in its Morning Song products constitute both "unfair or deceptive trade practices" and "unconscionable trade practices" within the meaning of the New Mexico Unfair Practices Act.

45.    Defendant's actions constituted "unconscionable trade practices" in that their concealment and omission of material facts and misrepresentations resulted in a gross disparity between the value received by Plaintiff and the Class and the price paid, in that bird seed which is toxic to birds has little or no value.

46.    The Defendant made representations and material omissions of fact regarding its Morning Song products to the public at large, and said representations and material omissions were false and/or misleading.

47.    Defendant's false or misleading representations and omissions of material fact were knowingly made in connection with the sale of goods or services in the regular course of the Defendant's trade or commerce, within the meaning of N.M. Stat. § 57-12-2(D) – (E).

48.    Defendant's representations and material omissions were of the type that may, tends to, or does deceive or mislead any person.

49.    Plaintiff and the Class suffered a loss of money or property, real or personal, as a direct and proximate result of Defendant's violations of the New Mexico Unfair Practices Act.

50.    Plaintiff and the Class therefore seek actual damages (or statutory damages in the sum of one hundred dollars if that amount is greater) and attorneys fees pursuant to N.M. Stat. § 57-12-10. In light of the fact that Defendant willfully engaged in the outrageous and wrongful

conduct described above, Plaintiff and the Class also request statutory treble damages pursuant to N.M. Stat. § 57-12-10(b).

51.    Plaintiff and members of the Class therefore request actual damages in an amount to be proven at trial, treble statutory damages, reasonable attorney's fees and their costs herein.

WHEREFORE, Plaintiff and the Class pray that the Court: (1) order that this action be certified and maintained as a class action under the New Mexico Unfair Practices Act; (2) enter judgment in favor of Plaintiff and the Class and against Defendant; and (3) award Plaintiff and the Class compensatory damages, treble statutory damages, costs of suit, and reasonable attorney's fees in an amount to be determined at trial.

## COUNT II

### UNJUST ENRICHMENT

COMES NOW Plaintiff, individually and on behalf of all others similarly situated, and for Count II of her Complaint against Defendant allege as follows:

52.    Plaintiff re-alleges the allegations contained in the foregoing paragraphs 1 through 106 as if fully set out herein.

53.    As stated with more particularity above, the Defendant embarked on and carried out a common scheme of marketing and selling its Morning Song products by omitting, suppressing, and/or concealing material information regarding those products; namely the Defendant failed to disclose that the products contained toxic pesticides and failed to provide the proper and necessary warnings regarding those pesticides as required by the EPA.

54.    The Defendant's practices were designed to result in the Plaintiff and members of the Class purchasing the Morning Song products.

55.     The Defendant's practices further resulted in the Plaintiffs' and members of the Class purchasing the Morning Song products without understanding the true efficacy and dangers of the Defendant's product or the Defendant's omissions, suppressions, and/or concealment of material terms to increase their own ill-gotten profits.

56.     The monies paid by Plaintiff and the Class to Defendant in the purchase of the Morning Song products conferred substantial benefits upon the Defendant. The Defendant knew of and appreciated the benefits conferred upon them by Plaintiff and the Class and accepted and retained these benefits, which, in justice and fairness, should be refunded and paid over to the Plaintiff and the Class in an amount to be proven at trial.

WHEREFORE, Plaintiff and the Class pray that the Court: (1) order that this action be certified and maintained as a class action; (2) enter judgment in favor of Plaintiff and the Class and against Defendant; and (3) award Plaintiff and the Class compensatory damages, punitive damages, costs of suit, and reasonable attorney's fees in an amount to be determined at trial.

## COUNT III

### VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO")

COMES NOW Plaintiff, individually and on behalf of all others similarly situated, and for Count III of her Complaint against Defendant alleges as follows:

57.     Plaintiff re-alleges the allegations contained in the foregoing paragraphs 1 through 111 as if fully set out herein.

58.     At all relevant times, Defendant was a "person" within the meaning of RICO, 18 U.S.C. § 1961(3).

23

59. The "Toxic Bird Seed Marketing Enterprise" constitutes an association-in-fact "enterprise" as that term is defined in 18 U.S.C. § 1964(4), that engages in, and the activities of which affect, interstate commerce. The members of the Toxic Bird Seed Marketing Enterprise are and have been associated through time, joined in purpose and organized in a manner amenable to hierarchal and consensual decision-making, with each member fulfilling a specific and necessary role in the scheme. Defendant, through the members of the the Toxic Bird Seed Marketing Enterprise intentionally manufactured bird seed containing pesticides toxic to birds and sold pesticide-containing seed in violation of federal law in order to realize greater profits and in so doing, deprived Plaintiffs of monies they paid and injured Plaintiff and the Class, their person and property.

60. Throughout the class period through the present, Defendant took affirmative steps to hide its fraud and scheme from discovery by the public, Plaintiff, the Class, and the FDA. The planning and carrying out of the scheme would have been beyond the capacity of each member of the Toxic Bird Seed Marketing Enterprise acting singly and without the aid of each other.

61. The Toxic Bird Seed Marketing Enterprise was comprised of certain officers, agents and employees of Defendant, all of whom engaged in and affected interstate commerce, because, *inter alia*, the Enterprise assisted Defendant in the furtherance of their scheme by marketing, selling and concealing the truth in order to induce American consumers, like Plaintiff and members of the Plaintiff class, to purchase the Morning Song products. The members of the Toxic Bird Seed Marketing Enterprise cannot be more specifically identified without discovery, as their criminal activities have been concealed from the public by the members of the Enterprise

24

62.     Defendant and the Toxic Bird Seed Marketing Enterprise began implementing their fraudulent scheme and engaging in the illegal activities pled above in 2005 at the latest, and continued until at least March of 2008.

63.     Defendant and the Toxic Bird Seed Marketing Enterprise engaged in unlawful activities for the purpose of illegally adding pesticides to its bird seed in order to reap a greater profit margin. During the class period, Defendant used the mail by deliberately causing to be mailed thousands of fraudulent communications designed to create, manage, and carry out their fraudulent scheme. This scheme involved the mailing and distribution of materials essential to Defendant's national marketing campaign to increase sales of the Morning Song products and to implement their sales plans and programs.

64.     Defendant's illegal activities constitute predicate acts under RICO. Defendant violated federal law by adding toxic pesticides to its Morning Song products. Defendant sought to evade federal investigations into its illegal use of registered pesticides by lying to the FDA and creating fake documents, as described above. During the class period, Defendant used the wires by deliberately communicating fraudulent communications relating to its Morning Song products designed to create and manage their fraudulent scheme. This scheme involved the dissemination of fraudulent information over the wires essential to Defendant's national marketing campaign to sell the toxic Morning Song products and to implement its sales plans and programs, constituting wire fraud and mail fraud.

65.     Defendant and the individual members of the Toxic Bird Seed Marketing Enterprise received a financial benefit for their participation in the scheme. Such financial benefits were the product of the scheme and could not have been realized had the Defendant not joined the Toxic Bird Seed Marketing Enterprise.

66.     Defendant has mailed or caused to be mailed thousands of mailings in furtherance of the scheme to realize profits at the expense of the safety of animals and the environment. Further, Defendant has conducted and/or participated in the conduct of Toxic Bird Seed Marketing Enterprise's affairs through a pattern of racketeering activity in violation of RICO, 18 U.S.C. § 1962(c) by engaging in numerous acts of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343.

67.     Defendant exerted control over the Toxic Bird Seed Marketing Enterprise and participated in the operation or management of the affairs of the enterprise, by

a.     Asserting direct control over the information and content disseminated to the vendors of its Morning Song products and the public regarding the safety and appropriateness of Morning Song products for use as bird seed across the country;

b.     Engaging in multiple instances of selling or otherwise dealing in regulated pesticides in a manner punishable under the laws of the United States;

c.     Asserting control over the creation and distribution of mass marketing and sales materials sent to vendors throughout the United States and;

d.     Placed their own employees and agents in positions of authority and control in the Toxic Bird Seed Marketing Enterprise.

68.     Each of Defendant's acts involved in the selling or otherwise dealing in toxic pesticides in a manner punishable under the laws of the United States and in Defendants' fraudulent mailings and interstate wire transmissions constitute "racketeering activity" within the meaning of 18 U.S.C. § 1961(1). Collectively, these violations constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

69.     Defendant has conducted and participated in the affairs of the Toxic Bird Seed Marketing Enterprise through a pattern of racketeering activity by selling or otherwise dealing in a product containing regulated pesticides in a manner punishable under the laws of the United States, as well by acts indictable under 18 U.S.C. §§ 1341 and 1343 (mail and wire fraud).

70.     In implementing their fraudulent scheme, Defendant was aware that Plaintiff and members of the Class depended on the honesty of Defendant in representing the safety and appropriateness of the Morning Song products.

71.     Defendant engaged in a pattern of racketeering activity intending to defraud Plaintiffs and the members of the Class.

72.     The above-described racketeering activities amounted to a common course of conduct intended to deceive Plaintiff and members of the Class. The racketeering activities were related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results affecting similar victims, including Plaintiff and members of the Class.

73.     Furthermore, Defendant and their officers and principals has willfully combined, conspired and agreed to violate 18 U.S.C. § 1962(c) with the Toxic Bird Seed Marketing Enterprise to conduct and/or participate, directly or indirectly, in the conduct of the Toxic Bird Seed Marketing Enterprise's affairs through a pattern of racketeering activity based upon numerous acts of mail and wire fraud.

74.     An object of the conspiracy was to defraud the Plaintiff and the members of the Class in order to realize profits. A further object of the conspiracy was to hide the fraud and scheme from discovery by the public, consumers and the FDA. Defendant embraced the object of the conspiracy and knowingly acted to support and facilitate the accomplishments of its goals.

27

75.     Plaintiff and the Class have suffered injuries and financial loss, in the form of payments for the Morning Song products that they would not have made had the Toxic Bird Seed Marketing Enterprise and Defendant not implemented its scheme to unlawfully gain profits at the expense of consumers in violation of federal law. If the Toxic Bird Seed Marketing Enterprise and Defendant had not engaged in such conduct, Plaintiffs and the Class would not have been injured.

76.     Plaintiff and the Class members' injuries were directly and proximately caused by Defendant's racketeering activity as described above.

77.     Therefore, Plaintiff and the Class pray that the Court enter judgment against Defendant for compensatory damages, treble statutory damages, costs of suit, and reasonable attorney's fees in an amount to be determined at trial.

WHEREFORE, Plaintiff and the Class pray that the Court: (1) order that this action be certified and maintained as a nationwide class action pursuant to the Racketeer Influenced and Corrupt Organizations Act; (2) enter judgment in favor of Plaintiff and the Class and against Defendant; and (3) award Plaintiff and the Class compensatory damages, treble statutory damages, costs of suit, and reasonable attorney's fees in an amount to be determined at trial.

Respectfully submitted,

THE DRISCOLL FIRM, P.C.

By:

JOHN J. DRISCOLL (MO54729)
211 N. Broadway, Ste. 4050
St. Louis, Missouri 63102
314-932-3232 phone
314-932-3233 facsimile

and

28

DOUGLAS P. DOWD (MO29240)
ALEX R. LUMAGHI (MO56569)
DOWD & DOWD, P.C.
211 North Broadway, Suite 4050
St. Louis, Missouri 63102
314-621-2500 phone
314-621-2503 facsimile

*Attorneys for Plaintiffs*

JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

12CV1728 JAH WMc

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| EDITH SALKELD | THE SCOTTS MIRACLE-GO COMPANY, INC. |

2012 JUL 12  PM 12: 43

CLERK US DISTRICT COURT

BY ____ DEPUTY

| (b) County of Residence of First Listed Plaintiff Santa Fe County, NM | County of Residence of First Listed Defendant |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| John Driscoll, The Driscoll Firm, P.C., 211 N. Broadway, Ste. 4050, St. Louis, MO 63102 (314) 932-3232 | |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question *(U.S. Government Not a Party)*

☐ 2  U.S. Government Defendant

☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | **PERSONAL INJURY** ☐ 365 Personal Injury - Product Liability | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | | ☐ 830 Patent | ☒ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | **PERSONAL PROPERTY** ☐ 370 Other Fraud | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 385 Property Damage Product Liability | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| | | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | **LABOR** ☐ 710 Fair Labor Standards Act | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | ☐ 720 Labor/Mgmt. Relations | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 530 General | ☐ 740 Railway Labor Act | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | ☐ 751 Family and Medical Leave Act | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 790 Other Labor Litigation | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | **FEDERAL TAX SUITS** |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | | | | ☐ 871 IRS—Third Party 26 USC 7609 |
| | | **IMMIGRATION** | | |
| | | ☐ 462 Naturalization Application | | |
| | | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district *(specify)*  ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
18 U.S.C. § 1961, et seq.

Brief description of cause:
Rico and Consumer Fraud action

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 75,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY *(See instructions):*

JUDGE Hon. John A. Houston

DOCKET NUMBER 12CV1592

DATE 07/11/2012

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # 4043   AMOUNT $350—   APPLYING IFP ____   JUDGE ____   MAG. JUDGE ____

07/12/12 WB

JS 44 Reverse  (Rev. 09/11)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.     (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.     Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.     Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.     Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.     Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.     Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**     Example:     U.S. Civil Statute: 47 USC 553
                                                                 Brief Description: Unauthorized reception of cable service

**VII.     Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.     Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS040543
Cashier ID: mbain
Transaction Date: 07/12/2012
Payer Name: DOWD DOWD
--------------------------------
CIVIL FILING FEE
 For: SALKELD V SCOTTS MIRACLE GO
 Case/Party: D-CAS-3-12-CV-001728-001
 Amount:        $350.00
--------------------------------
CHECK
 Check/Money Order Num: 37366
 Amt Tendered:  $350.00
--------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $53.00
charged for any returned check.
```